```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 13-1221(DSD/JSM)
```

Faith Ahlers,

        Plaintiff,

v.                                        **ORDER**

CFMOTO Powersports, Inc.,

        Defendant.

    Sofia B. Andersson-Stern, Esq. and Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, counsel for plaintiff.

    Boris Parker, Esq. and Parker & Wenner, 100 South Fifth Street, Suite 2100, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by counterclaim defendant Faith Ahlers. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

**BACKGROUND**

This employment dispute arises out of the August 1, 2011, termination of Ahlers by counterclaim plaintiff CFMOTO Powersports, Inc. (CFMOTO). At the time of her termination, Ahlers was employed by CFMOTO as an Operations Manager. Countercl. ¶ 8.

CFMOTO alleges that, after Ahlers was terminated, she accessed company email and computer systems and "drafted emails to business partners and dealers falsely claiming that CFMOTO had unsafe

products, was unfair in its dealings, and [was] in violation of various federal and state safety laws." Id. ¶¶ 12-13.  Further, CFMOTO alleges that Ahlers emailed Justin Jirgl, Compliance Officer at the U.S. Consumer Product Safety Commission (CPSC), and falsely accused CFMOTO of lying to the CPSC and of violating safety and licensing laws.  Id.  Finally, CFMOTO alleges that, after being terminated, Ahlers sent defamatory emails from anonymous email addresses to dealers with whom CFMOTO has business relationships. Id.

On August 27, 2013, Ahlers filed an amended complaint against CFMOTO. Ahlers alleged claims (1) for retaliation under the Consumer Product Safety Improvements Act, (2) under the Minnesota Whistleblower Act and (3) for unpaid wages under Minnesota Statutes § 181.13.  On September 10, 2013, CFMOTO counterclaimed, alleging (1) defamation, (2) tortious interference with contract, (3) tortious interference with existing and prospective economic advantage, (4) breach of employee duties to employer and (5) a violation of the Computer Fraud and Abuse Act (CFAA). Ahlers moves to dismiss the counterclaims.

## DISCUSSION

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as

2

true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  See Fed. R. Civ. P. 12(d).  The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  In this case, the emails purportedly sent by Ahlers to the dealers and to Jirgl are essential to CFMOTO's claims and are necessarily embraced by the pleadings. As a result, they are properly considered at this stage

in the proceedings. See Knievel v. ESPN, Inc., 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002).

## II. Defamation

CFMOTO first alleges a claim for defamation. Specifically, CFMOTO alleges that Ahlers "published to others comments regarding CFMOTO which accused CFMOTO of lying to CPSC and of violating other safety and licensing laws, and accusing CFMOTO of knowingly distributing unsafe products, and of engaging in unethical business practices." Countercl. ¶ 16. CFMOTO alleges that Ahlers made such comments to Jirgl and to dozens of independent dealers with whom CFMOTO has business relationships. In support of its defamation claim, CFMOTO has submitted (1) five emails allegedly sent by Ahlers to dealers on August 1, 2011, (2) an email allegedly sent by Ahlers to Jirgl on October 13, 2011, and (3) an email allegedly sent by Ahlers to CFMOTO dealers on July 20, 2012. See Anderson Aff. Exs. A-C.

To prove defamation, a plaintiff must show that the defendant made "a false and defamatory statement about the plaintiff ... in unprivileged publication to a third party ... that harmed the plaintiff's reputation in the community." Pope v. ESA Servs., Inc., 406 F.3d 1001, 1011 (8th Cir. 2005) (citation and internal quotation marks omitted), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). Statements made in reference to "one's business, trade or profession are

actionable per se, without proof of actual damages." Bebo v. Delander, 632 N.W.2d 732, 739 (Minn. Ct. App. 2001) (citation omitted).

Ahlers first argues that CFMOTO has not sufficiently identified to whom the statements were made. Specifically, Ahlers argues that CFMOTO has alleged only that she contacted "independent dealers" without identifying the dealers by name. "Minnesota law requires that a claim for defamation must be ple[aded] with a certain degree of specificity." Pope, 406 F.3d at 1011. "At a minimum, the plaintiff must allege who made the allegedly libelous statements, to whom they were made, and where." Id. (citations and internal quotation marks omitted). Here, CFMOTO alleges that Ahlers communicated the statements to Jirgl and "more than 90 independent dealers with relationships to CFMOTO." Countercl. ¶ 18. Moreover, several of the alleged emails identify the recipients by name. See, e.g., Anderson Aff. Ex. A. At this stage in the proceedings, such allegations sufficiently identify the recipients of the allegedly defamatory statements.

Ahlers next argues that the alleged statements to Jirgl cannot form the basis of a defamation claim. Specifically, Ahlers argues that the CPSC is a quasi-judicial body and that any statements made to the CPSC are absolutely privileged. "Statements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer,

5

attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation." Mahoney & Hagberg v. Newgard, 729 N.W.2d 302, 306 (Minn. 2007) (citation omitted). Here, however, such requirements are not met. Ahlers was not a judge, judicial officer, attorney, or witness. Moreover, at this stage in the proceedings, Ahlers cannot demonstrate that the CPSC had instituted quasi-judicial proceedings against CFMOTO or that her statements were made as part of such proceedings. Cf. Rockwood Bank v. Gaia, 170 F.3d 833, 838 (8th Cir. 1999) (applying Missouri law). Thus, Ahlers has not demonstrated that the alleged statements were absolutely privileged. See Mahoney & Hagberg, 729 N.W.2d at 306 (noting that the court "will not apply absolute privilege unless the administration of justice requires complete immunity from being called to account for language used." (citations and internal quotation marks omitted)). As a result, dismissal of the defamation claim is not warranted.

**III.  Tortious Interference with Contract**

CFMOTO next alleges a claim for tortious interference with contract. Specifically, CFMOTO alleges that emails sent by Ahlers were "intended to disrupt or interfere with the contracts CFMOTO had with its dealers." Countercl. ¶ 25. "To establish a claim for tortious interference of contract, a plaintiff must show: (1) the existence of a contract; (2) knowledge of the contract;

6

(3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach." Bebo, 632 N.W.2d at 738 (citation omitted). "A successful claim requires proof of all five elements." Id. (citation omitted).

Ahlers argues that dismissal is warranted because CFMOTO has not pleaded that Ahlers induced a breach. The court agrees. Indeed, CFMOTO has pleaded only that Ahlers *intended* to procure a contract's breach, not that she was successful in so doing. Such allegations cannot support a claim for tortious interference with contract. See Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 127 (Minn. Ct. App. 1998) ("Because no breach occurred here, [the] claim for tortious interference with contract must fail." (citation omitted)). As a result, dismissal is warranted.

**IV. Tortious Interference with Prospective Economic Advantage**

CFMOTO next alleges a claim for tortious interference with prospective economic advantage. Specifically, CFMOTO alleges that "Ahlers sent emails, from various anonymous email addresses, to existing and prospective dealers, that were designed to discourage business dealings with CFMOTO." Countercl. ¶ 38. Under Minnesota law, to recover for tortious interference with prospective economic advantage, a plaintiff must prove

> 1) The existence of a reasonable expectation of economic advantage;
> 2) Defendant's knowledge of that expectation of economic advantage;
> 3) That defendant intentionally interfered with plaintiff's reasonable expectation of

>economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;
>4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and
>5) That plaintiff sustained damages.

<u>Gieske ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.</u>, 844 N.W.2d 210, 219 (Minn. 2014).

Ahlers argues that the allegations that she intended to discourage business dealings are insufficient to sustain a tortious interference with prospective advantage claim. The court agrees. Indeed, a claim for tortious interference with prospective advantage may exist where such interferences "induc[es] or otherwise caus[es] a third person not to enter into or continue the prospective relation or (b) prevent[s] the other from acquiring or continuing the prospective relation." <u>Id.</u> at 217 (citations and internal quotation marks omitted). CFMOTO points to no authority to suggest that mere intent to interfere with prospective economic advantage gives rise to a cause of action. <u>See</u> <u>id.</u> at 218 ("Moreover, the law affords greater protection to *existing* contractual relationships, than to *prospective* business relationships." (emphasis in original)). As a result, dismissal is warranted.

**V.     Breach of Employee Duties to Employer**

CFMOTO next alleges that Ahlers breached her duties to (1) be honest and (2) not use its confidential information.[1]

   **A.     Duty of Honesty**

CFMOTO first argues that Ahlers breached an implied duty of honesty.  In support, CFMOTO relies on Hlubeck v. Beeler, 9 N.W.2d 252, 254 (Minn. 1943), which held that "[a]n employe[e], as an implied condition of his employment ..., is bound to serve his employer faithfully and honestly."  The court in Hlubeck, however, recognized the existence of such a duty only in the context of an employment contract.  Id. at 253.  Here, conversely, Ahlers was an at-will rather than a contractual employee.  CFMOTO points to no authority suggesting that a breach of the duty of honesty is actionable where, as here, there is no employment contract.  As a result, dismissal is warranted.

---

[1] CFMOTO also alleged that Ahlers breached the duties (1) "[t]o do what a reasonable employee would do in any situation;" (2) "to be loyal;" (3) "not to disrupt business;" (4) "to disclose wrongdoing;" (5) "to carry out and follow orders of the employer;" (6) "to work with reasonable care and skill;" (7) "to look after the employer's property if using it;" (8) "not to compete in business against the employer while still working as an employee;" and (9) "not to take bribes." Countercl. ¶ 29.  In its memorandum in opposition to the motion to dismiss, however, CFMOTO only argues that Ahlers beached the duty of honesty and the duty not to disclose confidential information.  As a result, the court considers the remaining claims waived, and dismissal of such claims is warranted.

### B. Duty Not to Use Confidential Information

CFMOTO next alleges that Ahlers breached the duty not to use confidential information. Specifically, CFMOTO alleges that Ahlers "intentionally acquired the names and contact information of CFMOTO's business relationships, including email addresses." Countercl. ¶ 30. Even in the absence of an employment agreement, "employees have a common-law duty not to wrongfully use confidential information or trade secrets obtained from an employer." Jostens, Inc. v. Nat'l Computer Sys., Inc., 318 N.W.2d 691, 701 (Minn. 1982).

Here, Ahlers argues that CFMOTO fails to state a claim because it has not alleged that the contact information at issue was confidential. "Confidential information is that which an employee knew or should have known was confidential." Id. at 702 (citation omitted). CFMOTO has not pleaded that the information was confidential, nor that Ahlers knew or should have known that it was confidential. Indeed, customer lists generally do not constitute confidential information or trade secrets. See Blackburn, Nickels & Smith, Inc. v. Erickson, 366 N.W.2d 640, 645 (Minn. Ct. App. 1985) ("[The] customer list which respondents allegedly misappropriated was not a trade secret or otherwise deserving of protection. It could be easily duplicated from public sources. Customers ... are ... a limited group easily identified, and whose identity is not protected."). As a result, CFMOTO cannot state a

10

claim for breach of the duty not to use confidential information, and dismissal is warranted.

**VI.  CFAA**

Finally, CFMOTO alleges a claim under the CFAA. Specifically, CFMOTO alleges that Ahlers "wrongfully and intentionally obtained access to CFMOTO's computer systems and obtained confidential information." Countercl. ¶ 43. The CFAA forbids any person who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4).

Ahlers argues that CFMOTO's allegations do not state a claim under the CFAA. The court agrees. The bare factual allegations - that Ahlers "wrongfully and intentionally obtained access to CFMOTO's computer systems and obtained confidential information" - are conclusory under Twombly and Iqbal. Moreover, CFMOTO has not pleaded several essential elements of the CFAA claim. Namely, CFMOTO does not plead (1) that Ahlers accessed the computer with the intent to defraud CFMOTO, (2) that the computer was protected or that Ahlers exceeded her authorized access, (3) that Ahlers' conduct furthered her intended fraud or (4) that Ahlers obtained anything of value. See 18 U.S.C. § 1030(a)(4). As a result, dismissal of the CFAA claim is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 15] is granted in part.

Dated:  June 9, 2014

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court